## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GCIU-EMPLOYER RETIREMENT FUND
AND BOARD OF TRUSTEEES OF THE
GCUI-EMPLOYER RETIREMENT FUND,

     *Plaintiffs,*

vs.                                Case No. 14-2303-EFM-GLR

COLERIDGE FINE ARTS, et al.

     *Defendants.*

## MEMORANDUM AND ORDER

Plaintiffs GCIU-Employer Retirement Fund and its Board of Trustees bring this action against two Irish companies, Coleridge Fine Arts and Jelniki Limited.  Plaintiffs seek to collect withdrawal liability payments under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").  Defendants move for dismissal under Fed. R. Civ. P. 12(b)(2) asserting that the Court lacks personal jurisdiction.  Because the Court finds that Defendants did not have sufficient minimum contacts with the forum and the exercise of personal jurisdiction would not comport with due process, the Court grants Defendants' Motion to Dismiss (Doc. 39).

## I.      Factual and Procedural Background[1]

Plaintiff GCUI-Employer Retirement Fund is a multiemployer pension plan. Plaintiff Board of Trustees is made up of the present trustees who are the named fiduciaries of the Fund. The Fund is primarily funded by contributions remitted by multiple participating employers as a result of negotiated collective bargaining agreements ("CBAs").

Plaintiffs allege the following facts in the Amended Complaint relating to Defendants' corporate structure. Defendant Coleridge Fine Arts ("CFA") is a corporation domiciled in the Republic of Ireland.  CFA was established in Dublin, Ireland, on or about December 19, 1980, and it is in the business of providing lithograph printing services.  Defendant Jelniki Limited ("Jelniki") is a company domiciled in the Republic of Ireland.  Jelniki's activities include owning lithographic printing businesses and printing for the computer industry in Europe and the United States. CFA is a wholly-owned subsidiary of Jelniki.

CFA owned Vile-Goller Fine Arts Printing and Lithographing Company ("Vile Goller"), a corporation organized in Missouri.  In 1998, Vile Goller merged with Constable Hodgins Printing Company, Inc., a corporation organized in Kansas. The name of the surviving corporation became Greystone Graphics, Inc. ("Greystone").

Greystone was a corporation organized under the law of Kansas and also provided lithograph printing services.  At the time of the merger, CFA acquired a 50 percent ownership interest in Greystone and retained the right to increase its ownership interest. In 2002, CFA acquired the remaining 50 percent ownership in Greystone. Plaintiffs also allege that CFA owns

---

[1] The facts are taken from Plaintiffs' Amended Complaint, as well as the exhibits attached to the Amended Complaint and the exhibits attached to Defendants' and Plaintiffs' briefing.

100 percent of JDV, Co.  JDV, Co. is allegedly an umbrella company that holds three companies: Greystone, Greystone Investment Company, and Coleridge Design and Imaging, Inc.

A CBA bound Greystone to make contributions to the Fund.  On or about February 2011, Greystone ceased doing business and is now a defunct corporation. On April 15, 2013, a default judgment was entered by the United States District Court in the Central District of California against Greystone, JDV, Co., Greystone Investment Company, and Coleridge Design and Imaging, Inc. in the amount of $4,454,092.02 in withdrawal liability.[2]

Plaintiffs filed suit in this Court on June 25, 2014, asserting that CFA was affiliated with Greystone and Coleridge Design and Imaging, Inc. and was liable for the withdrawal liability. Defendant CFA sought to quash allegedly defective service of process on it, but this Court denied Defendant's motion. Defendant CFA then filed a Motion to Dismiss asserting that the Court lacked personal jurisdiction over it. Plaintiffs then filed an Amended Complaint adding Jelniki as a Defendant and additional factual allegations.  Defendant CFA withdrew its pending Motion to Dismiss.

Defendants CFA and Jelniki then filed a Motion to Dismiss (Doc. 39) for lack of personal jurisdiction based on the allegations in the Amended Complaint.  In connection with this Motion to Dismiss, Defendants provide an affidavit.  In this affidavit, Eugene Reynolds, a director and shareholder of CFA, states that CFA and Jelniki are separate Irish-registered companies that are not registered to conduct business and do not conduct business in Kansas.  Reynolds avers that CFA and Jelniki never had direct control of the daily affairs of Greystone, did not have the authority to make business decisions related to Greystone, did not conduct business on behalf of

---

[2] $4,325,770.00 constitutes the withdrawal liability to the Fund, while $36,318.45 in interest, $90,841.77 in attorneys' fees, and $1,161.80 in costs make up the difference to total $4,454,092.02.

Greystone, did not enter into contracts with Greystone, did not execute agreements in relation to the sale of Greystone, and did not acquire or purchase any of Greystone's property during the sale of Greystone's property. CFA and Jelniki had separate budgets, payroll, and business records from Greystone.  CFA and Jelniki do not employ individuals in the United States, do not provide services to customers in the United States, do not have a designated agent for service of process in the United States, and have never litigated claims, either as a plaintiff or defendant, in the United States.

Reynolds avers that Greystone never conducted business on behalf of CFA or Jelniki. Reynolds states that Jelniki only had an investment interest in CFA, which only had an investment interest in JDV, Co. He also avers that CFA operated in a different sector of the printing market than Greystone, and Jelniki and CFA only operated in Ireland while Greystone only operated in the United States. Mr. Reynolds also states that although he was an officer and board member of Greystone, any action that he took on behalf of Greystone was not at the direction or interest of either CFA or Jelniki.  In a subsequent affidavit, Reynolds avers that CFA's and Jelniki's respective corporate documents are located in Ireland, and the vast majority of relevant witnesses would likely be located in Ireland.[3]

In the original briefing of Defendants' Motion to Dismiss, Defendants briefed the personal jurisdiction issue by stating that the case was based on diversity. Because this case is actually premised on federal question, the Court ordered additional briefing by the parties to address relevant Tenth Circuit law. The additional briefing is complete, and the Court will now address Defendants' Motion to Dismiss on the basis of all the briefing.

---

[3] Plaintiffs also provided an affidavit with their response brief and attached four documents. The Court will discuss the relevance of the attached documents below.

## II.    Legal Standard

A plaintiff opposing a motion to dismiss based on lack of personal jurisdiction bears the burden of showing that jurisdiction over the defendant is appropriate.[4]  In a pretrial motion to dismiss, when the matter is decided on the basis of affidavits and written materials, the plaintiff is only required to make a prima facie showing that personal jurisdiction is proper to avoid dismissal.[5]   Once the plaintiff makes a prima facie showing, the defendant must "present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.' "[6]

"The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[7]  "However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true."[8]  " 'The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading.' "[9]

---

[4] *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000) (citing *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996)).

[5] *Id.*

[6] *Id.* at 1227 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)).

[7] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (internal quotations omitted).

[8] *Id.*

[9] *Id.* at 1508 (quoting *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989)).

### III.   Analysis

Plaintiffs bring a claim for withdrawal liability under ERISA and the MPPAA.  Under the MPPAA, an employer incurs withdrawal liability to a multiemployer plan if the employer partially or completely withdraws from the plan.[10]  Pursuant to 29 U.S.C. § 1383(a)(1), a complete withdrawal occurs if "an employer permanently ceases to have an obligation to contribute under the plan."  Businesses that are under "common control" are treated as a "single employer" and are jointly and severally liable for an affiliate business.[11]

As noted above, withdrawal liability in the amount of $4,454,092.02 was previously assessed against Greystone, JDV, Co., Greystone Investment Company, and Coleridge Design and Imaging, Inc.  These companies are all apparently defunct. Plaintiffs seek to impose liability on Defendants CFA and Jelniki by arguing that Defendants are affiliated with Greystone. Plaintiffs allege that CFA owned 100 percent of Greystone and that CFA is a wholly-owned subsidiary of Jelniki.  Thus, they assert that Defendants had control of Greystone such that Defendants should be treated as a single employer and are jointly and severally liable for Greystone's withdrawal liability.  Defendants seek dismissal on the basis that they are not subject to personal jurisdiction because they had insufficient contacts with the forum and the exercise of personal jurisdiction would not comport with due process.

Plaintiff's federal MPPAA claim, brought under ERISA, is the only claim brought against Defendants.  "Before a federal court can assert personal jurisdiction over a defendant in a

---

[10] 29 U.S.C. § 1381.

[11] *See* 29 U.S.C. § 1301(b)(1); *see also Central States, Southeast and Southwest Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 873-74 (7th Cir. 2006) ("For purposes of determining withdrawal liability, ERISA defines an 'employer' as the business that directly participates in the plan, as well as those entities that constitute the business's 'control group.' All entities constituting the control group incur withdrawal liability.") (citing 29 U.S.C. § 1301(b)(1)).

federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."[12]   "[S]ervice of process and personal jurisdiction both must be satisfied before a suit can proceed."[13]   Federal Rule of Civil Procedure 4 governs service of process.  With regard to personal jurisdiction in federal question cases, the Due Process Clause of the Fifth Amendment guides the analysis.[14]

In this case, Defendants are foreign corporations and were served in Ireland.[15]   Federal Rule of Civil Procedure 4(k)(2)(A)-(B) provides that for a claim arising under federal law, serving a summons establishes personal jurisdiction if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and . . . exercising jurisdiction is consistent with the United States Constitution and laws."[16]   Rule 4(k)(2) "serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due

---

[12] *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (quotation marks and citations omitted).

[13] *Id.*

[14] *Id.* at 1210.

[15] The parties previously disputed whether Plaintiffs effectively served Defendants, and the Court denied Defendants' Motion to Quash Defective Service of Process. Doc. 26.

[16] Fed. R. Civ. P. 4(k)(1)(A) and (C) provides that serving a summons will establish personal jurisdiction over a defendant if the defendant is subject to the courts of the state where the district court is located or if a federal statute authorizes service.  Neither of these rules appears applicable in this case. First, Defendants state that they are not subject to personal jurisdiction in Kansas. In addition, Plaintiffs contend that Kansas's long arm statute is irrelevant, and the Court's analysis should be under Rule 4(k)(2) and whether the actions arise out of or relate to Defendants' contacts with the United States. Thus, Rule 4(k)(1)(A) is not applicable. Second, although ERISA, through 29 U.S.C. § 1132(e)(2), authorizes nationwide service of process, Defendants are not domestic corporations. Instead, they are domiciled in Ireland. Accordingly, Rule 4(k)(1)(C) appears inapplicable. Thus, the Court concludes that Fed. R. Civ. P. 4(k)(2) (the so-called "federal long-arm statute") is the relevant rule.  The Tenth Circuit has not addressed this rule.

process."[17]  There are three requirements under Rule 4(k)(2) that must be met: "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process."[18]

The first two requirements are met. Plaintiffs bring an ERISA and MPPAA claim, and Defendants are not subject to jurisdiction in any state court in the United States.[19]  The third and final question then is whether the exercise of personal jurisdiction over these two Ireland corporations comports with due process.[20]

Due process allows a court to exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the

---

[17] *Synthes v. G.M. Doe Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1296 (Fed. Cir. 2009).

[18] *Id.* at 1293-94 (citations omitted). The Federal Circuit noted that the Second, Seventh, and First Circuits use this test. The Seventh Circuit actually set forth a four-part test: "(1) the plaintiff's claims must be based on federal law; (2) no state court could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction must be consistent with the laws of the United States; and (4) the exercise of jurisdiction must be consistent with the Constitution." *See Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000).  As noted above, the Tenth Circuit has not addressed Fed. R. Civ. P. 4(k)(2).

[19] Defendants concede the second element for purposes of this motion only.

[20] At first glance, it would appear that the third question under Fed. R. Civ. P. 4(k)(2) (whether the exercise of jurisdiction over a foreign defendant comports with due process) is the same question as the second question set forth in *Peay* (whether the exercise of jurisdiction comports with due process).  The Court concludes that although these inquiries are similar, they are nevertheless separate inquiries. Fed. R. Civ. P. 4(k)(2) relates to effective service while the second inquiry under *Peay* specifically relates to personal jurisdiction.  As noted by the Tenth Circuit in *Peay*, these are separate inquiries. *Peay*, 205 F.3d at 1209-10 (noting that service of process and personal jurisdiction "both must be satisfied before a suit can proceed" and "they are distinct concepts that require separate inquiries.") In addition, in *Peay*, the Tenth Circuit proceeded to the personal jurisdiction analysis after concluding that service of process was appropriate under Fed. R. Civ. P. 4(k)(1). *Id.* at 1210-11 (noting that service of process was proper and the court must next determine whether personal jurisdiction comports with due process). The Tenth Circuit did not address Fed. R. Civ. P. 4(k)(2), and only addressed Rule 4(k)(1) because the defendant corporation was a domestic one and ERISA authorized nationwide service of process.  In this case, Defendant corporations are foreign, and the Court must first determine due process considerations under Fed. R. Civ. P. 4(k)(2)(B) before proceeding to the personal jurisdiction due process factors set forth in *Peay*. As noted above, however, these are similar inquiries, and the Court is cognizant that the Fifth Amendment (rather than the Fourteenth Amendment) should guide the Court's analysis.

suit does not offend 'traditional notions of fair play and substantial justice.' "[21]  "Establishment of minimum contacts with the forum state requires a showing that the defendant 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State . . . .' "[22]  In this case, the forum is the United States in general, rather than Kansas in particular.

The minimum contacts standard can be satisfied either through specific jurisdiction or general jurisdiction.[23]  Specific jurisdiction exists if the nonresident defendant "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."[24]  General jurisdiction requires a nonresident defendant's "continuous and systematic general business contacts" with the forum.[25]  Here, Plaintiffs proceed on a specific jurisdiction theory.  Thus, the appropriate question is whether Defendants purposefully directed their activities toward the United States, and whether the alleged injuries relate to these activities.

Plaintiffs argue that this Court has specific personal jurisdiction over Defendants CFA and Jelniki because they purposefully directed activities toward the United States when they acquired Greystone (a Kansas-based company).[26]  Plaintiffs contend that Defendants CFA and Jelniki had knowledge that they were taking on the future potential risk of withdrawal liability

---

[21] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citing *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

[22] *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[23] *Id.* at 1058.

[24] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks and citations omitted).

[25] *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

[26] As noted above, CFA is a wholly-owned subsidiary of Jelniki. Thus, CFA is allegedly the parent of Greystone, and Jelniki is allegedly the grandparent of Greystone.

based on Defendants' alleged prior knowledge that Greystone participated in a pension fund and had pension obligations.   In addition, Plaintiffs assert that during Defendants' ownership of Greystone, Greystone investigated the amount of its withdrawal liability to the pension fund as part of its planning.   Finally, Plaintiffs contend that because two of Defendants' owners (Eugene Reynolds and Kevin Walsh) served on Greystone's board of directors, Defendants must have had knowledge of Greystone's potential for withdrawal liability. Plaintiffs are essentially relying upon corporate affiliation for the basis of jurisdiction.[27]

Generally, "a holding or parent company has a separate corporate existence [from its subsidiary] and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity."[28]   "Companies conducting business through their subsidiaries can qualify as transacting business in a state, provided the parent exercises sufficient control over the subsidiary."[29]   Stock ownership, by itself, does not subject the parent corporation to in personum jurisdiction of the subsidiary corporation.[30]   Likewise, jurisdiction over a parent corporation does not "automatically establish jurisdiction over a wholly owned subsidiary."[31]   Instead, each defendant's contacts with the forum must be individually considered.[32]

---

[27] In the briefing, Plaintiffs do not specifically argue an alter-ego theory and do not argue that the Court should pierce the corporate veil. In their Amended Complaint, however, they do include two allegations that Greystone was an alter ego of Defendants and thus Defendants did business in the United States. As will be noted in this opinion, there is no evidence to support Plaintiffs' allegations. Indeed, Defendants provide evidence that Defendants and Greystone operated as separate entities.

[28] *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir. 1974).

[29] *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1278 (10th Cir. 2005).

[30] *Quarles*, 504 F.2d at 1364.

[31] *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 n.13 (1984).

[32] *Id.*

-10-

Defendants provide an affidavit in which Eugene Reynolds, director and shareholder of CFA, avers that Defendants CFA and Jelniki never had direct control over the daily affairs of Greystone.  Defendants, at all times, had separate budgets, payroll, and business records from Greystone.  Defendants never had any authority to make business decisions related to Greystone and never conducted business on behalf of Greystone.  Similarly, Greystone never conducted any business on behalf of Defendant.  There simply is no evidence that corporate formalities were not observed or evidence that Defendants exercised control over Greystone.

Plaintiffs contend that Defendants' owners actively controlled and participated in the management and operations of Greystone. Plaintiffs direct the Court to several exhibits demonstrating that two individuals (Reynolds and Walsh) are the owners of and members of Defendants and also sat on Greystone's board of directors. These documents do not demonstrate that Defendants controlled the day-to-day activities of Greystone. Instead, they simply demonstrate that Defendants and Greystone had several common directors at one time. "The identity of officers and directors is insufficient to allow corporate veil piercing."[33]  In addition, Defendants provide an affidavit in which Reynolds states that any action he took as an officer or board member of Greystone was not taken at the direction or interest of Defendants CFA or Jelniki.  Reynolds also avers that he was not involved in the day-to-day affairs of Greystone and names the individual who managed Greystone's day-to-day affairs. That individual was not an officer or employee of Defendants CFA or Jelniki.

Plaintiffs also argue that Defendants expanded their printing business operations in the United States by conducting business through their subsidiary, Greystone.  Again, Plaintiffs rely

---

[33] *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1263 (10th Cir. 1989) (citations omitted).

-11-

on several documents in an attempt to establish this fact, but the documents do not support Plaintiffs' contention. Although these documents may show that CFA was affiliated with Defendants, they do not show that Defendants controlled the daily activities of Greystone such that Defendants are subject to personal jurisdiction in the United States.

As noted above, Plaintiffs are essentially relying upon corporate affiliation. Corporate affiliation in no way demonstrates that Defendants purposefully directed activities toward the United States. There is no evidence or allegations of Defendants transacting business in the United States or Kansas or purposefully directing activities toward the United States or Kansas. Quite simply, there are no allegations, nor is there any evidence, that either Defendant had any contact with the forum.

In this case, however, Plaintiffs bring suit under ERISA and assert that Defendants are jointly and severally liable for Greystone's withdrawal liability because they should be considered a "single employer."  Plaintiffs direct the Court's attention to a United States District Court for the District of Columbia case, *Pension Benefit Guaranty Corporation v. Asahi Tec Corporation*,[34] in an attempt to support their position that personal jurisdiction exists over Defendants. In *Asahi Tec*, the court found that a Japanese foreign corporation's status as a controlled group member of a United States company sufficed to give it personal jurisdiction over the foreign defendant. Without discussing *Asahi Tec* in detail, the Court simply notes that the case involved the termination of a plan, rather than a withdrawal from a plan.[35] Accordingly, the cause of action was different than the cause of action in this case. Furthermore, the facts in *Asahi Tec* demonstrated that the foreign corporation defendant had detailed involvement in

---

[34] 839 F. Supp. 2d 118 (D.D.C. 2012).

[35] *Id.* at 128.

obtaining the wholly-owned United States subsidiary, including performing due diligence as to the subsidiary's pension obligations.[36] Thus, the Court finds the case unpersuasive and distinguishable.

In contrast, Defendants direct the Court to a Seventh Circuit case, *GCIU-Employer Retirement Fund v. Goldfarb Corp.*,[37] in which the Seventh Circuit found that a foreign defendant did not have sufficient minimum contacts with the United States to satisfy due process considerations. In *Goldfarb*, the plaintiff (a multi-employer pension plan)[38] sued a Canadian employer to collect withdrawal liability payments under ERISA.[39] The Canadian defendant, Goldfarb, owned 60 percent of a United States corporation, Fleming.[40] Goldfarb, however, did not direct or control the daily affairs of Fleming and also had separate payrolls, bank accounts, and filed separate tax returns.[41] Fleming went bankrupt, and in the bankruptcy process, sold its assets.[42] The plaintiff argued that Fleming incurred withdrawal liability and sought to collect from Goldfarb that withdrawal liability.[43] Goldfarb moved for dismissal asserting that the court lacked personal jurisdiction over it. The Seventh Circuit agreed and determined that Goldfarb's contacts with Fleming's lenders were "too attenuated to support specific personal jurisdiction"

---

[36] *Id.* at 120-21, 129

[37] 565 F.3d 1018 (7th Cir. 2009).

[38] The same plaintiff as in this case.

[39] *Id.* at 1020.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

and its contacts with the United States were not sufficiently related to the plaintiff's cause of action.[44]  Thus, the Seventh Circuit dismissed the case against the Canadian defendant, Goldfarb.

Although *Goldfarb* involved the same cause of action and there are several similar facts to the facts in this case, it is not entirely on point.  In *Goldfarb*, the plaintiff sought to impose liability upon the defendant through the foreign defendant's contacts with its subsidiary's lenders.[45]  That fact is not present in this case. Instead, Plaintiff seeks to impose liability upon Defendants on the basis of Defendants' acquisition of Greystone.  In addition, in *Goldfarb*, the court noted that "neither party contests, that defendant's ownership of a majority of Fleming stock is insufficient to establish specific personal jurisdiction."[46]  Here, Plaintiff does not agree with that proposition.  Indeed, as previously noted, Plaintiff takes the position that Defendants' acquisition of Greystone (as their allegedly wholly-owned subsidiary) exposed Defendants to Greystone's withdrawal liability.

Although the opinion in *Goldfarb* is not entirely on point, the Court finds the Seventh Circuit's opinion in *Goldfarb*, and its opinion in *Central States*, *Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*,[47] instructive.  In *Reimer*, the Seventh Circuit also addressed withdrawal liability under ERISA and the MPPAA. A United States corporation, ICTL, went out of business, ceased to have an obligation to contribute to a pension fund, and was assessed withdrawal liability under the MPPAA.[48]  The plaintiff sought to impose this

---

[44] *Id.* at 1025.

[45] *Id.* at 1023.  Prior to Fleming filing for bankruptcy, the defendant had several contacts with Fleming's creditors.

[46] *Id.*

[47] 230 F.3d 934.

[48] *Id.* at 938.

withdrawal liability on two Canadian companies, REE and REWCOR, after learning that these companies were affiliated with ICTL, the United States corporation.[49]

The plaintiff, in *Reimer*, acknowledged that generally corporate ownership alone is insufficient to establish personal jurisdiction.[50] The plaintiff argued, however, that this general principle is inapplicable "in the context of withdrawal liability under MPPAA because 29 U.S.C. § 1301(b)(1) states that all businesses under common control shall be treated as a single entity."[51] The plaintiff asserted that because the MPPAA provision had been in effect for many years, the defendants "should have reasonably anticipated being subject to MPPAA liability in … the United States."[52]

The Seventh Circuit rejected this argument and stated that "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary."[53]  It found that the plaintiff's argument that the analysis "changes where a federal statute premises liability on corporate affiliation ignores the process by which courts determine whether specific personal jurisdiction exists and confuses liability and jurisdiction."[54]  As the Seventh Circuit noted, "jurisdiction and liability are

---

[49] *Id.*  Defendant REE was the parent corporation to ICTL, and REWCOR was a wholly owned subsidiary of REE.

[50] *Id.* at 943.

[51] *Id.*

[52] *Id.*

[53] *Id.*  The Seventh Circuit considered due process concerns under the service of process provisions in both Fed. R. Civ. P. 4(k)(1) (state long-arm) and Fed. R. Civ. P. 4(k)(2) (federal long-arm).  *Id.* at 940-42.

[54] *Id.* at 944.

two separate inquiries."[55]  "MPPAA's control group provision regarding withdrawal liability does not alter the rule that corporate affiliation or ownership is not a sufficient minimum contact for the exercise of personal jurisdiction."[56]  The Seventh Circuit found that the United States subsidiary "conducted business as a corporate entity" distinct from the affiliated corporate defendants.[57]  Thus, the circuit determined that the two affiliated Canadian companies were not subject to personal jurisdiction in the United States on the basis of their relationship with the United States company.[58]

In both *Reimer* and *Goldfarb*, the Seventh Circuit found that "in actions seeking withdrawal liability, ERISA's broad 'definition of corporate affiliation as an element of withdrawal liability does not confer personal jurisdiction on the basis of such affiliation.' "[59]  Instead, the Seventh Circuit required a demonstration of sufficient minimum contacts by the parent corporation with the forum.[60]  The Court finds the Seventh Circuit's reasoning in these two cases instructive here.

As noted above, Defendants do not employ individuals in the United States, do not provide services to customers in the United States, and have never litigated claims in the United States. Greystone did not conduct business on behalf of Defendants, and Defendants did not conduct business on behalf of Greystone.  Defendants and Greystone had separate budgets,

---

[55] *Id.*

[56] *Id.* at 944-45.

[57] *Id.* at 945.

[58] *Id.*

[59] *Goldfarb*, 565 F.3d at 1023-24 (citing *Reimer*, 230 F.3d at 944).

[60] *Id.* at 1024-25; *Reimer*, 230 F.3d at 946.

payroll, and business records. Instead, Plaintiffs primarily rely upon corporate affiliation (or Defendants' alleged status as controlled group members under ERISA) for the basis of personal jurisdiction. ERISA's statute premising liability on controlled group status is simply insufficient to demonstrate minimum contacts establishing personal jurisdiction. To the extent that Plaintiffs allege that Defendants directly controlled Greystone's daily affairs, their allegations are belied by the evidence. Thus, the Court finds that there are not sufficient minimum contacts by Defendants, and the exercise of personal jurisdiction does not comport with due process.

Finally, even though the Court has already concluded that the exercise of jurisdiction does not comport with due process, the Court will also address the Fifth Amendment constitutional concerns as outlined by the Tenth Circuit in *Peay*. In federal question cases, a defendant must demonstrate constitutionally significant inconvenience in order to avoid the exercise of personal jurisdiction over it.[61] Some factors to consider under this test include:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.[62]

In this case, as previously discussed, Greystone's contacts (as a subsidiary of Defendant CFA) with Kansas are insufficient to establish *Defendants' contacts* with the forum. In addition,

---

[61] *Peay*, 205 F.3d at 1212.

[62] *Id*. (citing *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 203 (E.D. Pa. 1974)).

there are no other contacts by Defendants with the United States or Kansas.  With regard to the second factor, it would be inconvenient for Defendants (Irish corporations) to defend this suit in the United States, particularly when the evidence demonstrates that these corporations do not have offices or representatives in the United States.  As to the judicial economy factor, it does not weigh in any party's favor.  With regard to the fourth factor, discovery would proceed in the United States, but all of Defendants' documents and witnesses would likely be in Ireland.[63] Finally, the regulated activity is an ERISA matter to be determined by United States' statutes and regulations, and thus this factor would appear to weigh in Plaintiffs' favor. However, the lack of Defendants' contacts with the United States, and thus the apparent lack of involvement in the regulated activity, is also a relevant consideration. In sum, the Court finds that on balance, Defendants demonstrate a constitutionally significant inconvenience in litigating this matter in the United States.   Thus, the Court finds that personal jurisdiction is not warranted over Defendants.

Finally, the Court denies Plaintiffs' request to stay Defendants' Motion to Dismiss to permit Plaintiffs to conduct jurisdictional discovery. There would be no benefit of permitting additional discovery because the evidence demonstrates that Defendants were not engaged in Greystone's daily affairs.  As noted by the Seventh Circuit in *Reimer*, "[f]oreign nationals

---

[63] Other arguments in Plaintiffs' brief demonstrate that they believe that Defendants' status simply as the alleged control group owner of Greystone subjects them to liability, as well as personal jurisdiction. Plaintiffs argue that "there will likely be little to no discovery needed in this matter as liability and the amount of liability are already established through the rules under ERISA and MPPAA." Plaintiffs' argument suggests that liability against Defendants is already a foregone conclusion due to Defendants' status. Again, the Court finds the Seventh Circuit's holding that personal jurisdiction and liability are separate inquiries persuasive.

usually should not be subjected to extensive discovery in order to determine whether personal jurisdiction over them exists."[64]  Accordingly, the Court grants Defendants' Motion to Dismiss.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Doc. 39) is hereby **GRANTED**.

**IT IS SO ORDERED**.

Dated this 9th day of December, 2015.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[64] *Reimer*, 230 F.3d at 946 (citation omitted).