FILED
United States Court of Appeals
Tenth Circuit

August 16, 2017

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GCIU-EMPLOYER RETIREMENT
FUND AND BOARD OF TRUSTEES
OF THE GCIU-EMPLOYER
RETIREMENT FUND,

Plaintiffs - Appellants,

v.

COLERIDGE FINE ARTS; JELNIKI
LIMITED,

Defendants - Appellees.

No. 16-3007
(D.C. No. 2:14-CV-02303-EFM-GLR)
D. Kansas

---

ORDER AND JUDGMENT[*]

---

Before **KELLY**, **LUCERO,** and **MURPHY**, Circuit Judges.

---

I.  Introduction

Plaintiffs GCIU-Employer Retirement Fund and the Board of Trustees of the GCIU-Employer Retirement Fund (collectively the "Fund") appeal from the dismissal of their action against Defendants, Coleridge Fine Arts ("Coleridge")

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.



and Jelniki Limited ("Jelniki"). The suit was filed pursuant to the Multiemployer Pension Plan Amendments Act (the "MPPAA"), 29 U.S.C. §§ 1381-1461, and involved the Fund's attempt to collect withdrawal liability from Coleridge and Jelniki. The dismissal was based on the district court's conclusion it lacked personal jurisdiction over Coleridge and Jelniki, both of which are corporations domiciled in the Republic of Ireland.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **reverses** the dismissal of the Fund's suit and **remands** the matter for further proceedings.

## II.   Background

The Fund is a multiemployer pension plan within the meaning of the MPPAA. Greystone Graphics, Inc. ("Greystone"), a Kansas corporation wholly owned by Coleridge, made contributions to the Fund pursuant to the terms of a collective bargaining agreement. In February 2011, Greystone ceased doing business, effectuating a complete withdrawal from the Fund. The Fund obtained a default judgment against, *inter alia*, Greystone and Coleridge based on allegations Greystone's cessation of business gave rise to withdrawal liability under the MPPAA. *See* 29 U.S.C. §§ 1381, 1383, 1391 (providing that an employer who completely withdraws from a multiemployer plan is liable for an amount sufficient to cover the employer's share of unfunded vested benefits). The Fund initiated the instant action against Coleridge and Jelniki, arguing they

are jointly and severally liable for the withdrawal liability because they are members of Greystone's control group.[1] *See* 29 U.S.C. § 1301(b)(1).

Coleridge and Jelniki moved to dismiss the Fund's suit on the basis the federal district court lacked personal jurisdiction over them. The district court granted the motion, rejecting the Fund's argument that specific jurisdiction existed because Defendants purposefully directed their activities at the United States. The court also denied the Fund's request for jurisdictional discovery. This appeal followed.

### III. Discussion

*A. Legal Standards*

Where, as here, the district court grants a pre-trial motion to dismiss without conducting an evidentiary hearing, this court reviews the district court's ruling de novo and accepts as true the uncontroverted factual allegations in the complaint. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). A plaintiff can satisfy his burden to establish personal jurisdiction over the defendant by making a prima facie showing that jurisdiction is proper. *Id.*

When a plaintiff's claims arise under federal law and the defendant is not subject to the jurisdiction of any state's court of general jurisdiction, Rule 4(k)(2) of the Federal Rules of Civil Procedure provides for federal long-arm jurisdiction

---

[1] Coleridge is a subsidiary of Jelniki.

if the plaintiff can show that the exercise of jurisdiction comports with due process.[2] *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). Here, Defendants concede the Fund's claims arise under federal law and no state court in the United States has jurisdiction over them. *See id.* (joining three other circuit courts of appeals in holding "a defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed" (quotation and alteration omitted)). Thus, the only question at issue is whether the exercise of federal jurisdiction satisfies Fifth Amendment due process standards. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1211-12 (10th Cir. 2000). To resolve this issue, we must determine whether Defendants have had minimum contacts with the United States. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 942-43 (7th Cir. 2000). Consistent with the minimum contacts standard, a federal court may exercise specific jurisdiction[3] over a foreign defendant if the

---

[2]The Fund's suit was brought pursuant to ERISA which provides for nationwide service of process, but not worldwide service of process. 29 U.S.C. § 1132(e)(2); *see also Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) (interpreting § 1132(e)(2) to authorize nationwide service of process). Defendants were served in Ireland. Thus, § 1132(e)(2) does not provide a basis for jurisdiction.

[3]"[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation
(continued...)

defendant purposefully directed its activities at the forum and the plaintiff's injuries arose from the defendant's forum-related activities. *Dudnikov*, 514 F.3d at 1071 (quotations omitted).

*B. Analysis*

Relying on a case from the United States District Court for the District of Columbia, the Fund argues Defendants purposefully directed their activities toward the United States by acquiring Greystone with knowledge of the possibility of withdrawal liability. *See Pension Ben. Guar. Corp. v. Asahi Tec Corp.*, 839 F. Supp. 2d 118, 124 (D. D.C. 2012). In *Asahi Tec*, the D.C. district court concluded it could exercise personal jurisdiction over the defendant, a Japanese corporation, because the defendant acquired a United States subsidiary "with its eyes wide open" to the "possibility of control[] group liability" under ERISA. *Id.* Documentation showed the defendant hired a consultant to evaluate the scope of the subsidiary's employee benefit plan and develop strategies to mitigate any obligations arising from the subsidiary's participation in the plan. *Id.* It took these actions after learning the plan "had unfunded benefit and other

---

[3](...continued)
omitted). If the controversy does not arise directly from a defendant's forum-related activities, a federal court may nevertheless exercise general jurisdiction over a foreign defendant if the plaintiff can show its ties to the forum are "continuous and systematic." *Id.* (quotation omitted). In its amended complaint, the Fund asserted only that the federal court has specific jurisdiction over the claims it has asserted.

pension-related liabilities" but before the acquisition. *Id.* The district court noted the negotiated purchase price was based, in part, on the potential control group liability for the underfunded plan. *Id.*

The Fund asserts the facts it has alleged in its complaint are nearly identical to those alleged by the plaintiff in *Asahi Tec*. Specifically, it claims Coleridge knew of the future potential risk of withdrawal liability stemming from Greystone's participation in the Pension Fund when it acquired Greystone and, thus, it purposefully directed its activities at the forum. Even if this court was inclined to give any weight to the district court decision in *Asahi Tec*, the facts alleged by the Fund are not comparable. In *Asahi Tec*, it was alleged the defendant knew the subsidiary actually had pension-related liabilities at the time of the acquisition. There is no similar claim made by the Fund in its amended complaint. True, the complaint alleges Coleridge knew Greystone was a long-time contributor to the Fund and had knowledge of the risk of future control group liability in 2002 at the time it acquired the remaining 50% interest in Greystone. The Fund, however, did not allege that any withdrawal liability actually or even potentially existed at that time. There was no allegation that Greystone employees were entitled to receive unfunded vested benefits or any assertion regarding the inapplicability of the MPPAA's safe harbor provisions. In contrast, the plaintiff in *Asahi Tec* alleged the defendant learned the pension plan in which the subsidiary participated "had unfunded benefit and other pension-

-6-

related liabilities" at the time of the acquisition. *Id.* Here, the Fund admits Greystone continued to contribute to the Fund until February 2011, when it ceased doing business. Consequently, the withdrawal liability that forms the basis of the Fund's claims against Defendants did not arise until thirteen years after Coleridge acquired a fifty percent ownership in Greystone and nine years after it acquired the remaining fifty percent interest. Because any potential future risk of withdrawal liability was wholly speculative at the time Coleridge acquired Greystone, Defendants did not assume a known risk of control group liability at that time. The Fund's argument, thus, becomes nothing more than an assertion of personal jurisdiction based solely on corporate affiliation or stock ownership. That assertion is not sufficient to show minimum contacts even under the ruling in *Asahi Tec*.

This leaves the Fund with no legal authority for the proposition that the acquisition of a company that participates in a multiemployer pension plan is, by itself, sufficient to establish personal jurisdiction over the acquiring company and no reasoned argument to support the notion that such a rule would comport with due process. *See Shaffer v. Heitner*, 433 U.S. 186, 213-16 (1977) (holding due process requires that jurisdiction be based on more than a mere ownership interest in an entity located in the forum). To the contrary, the Seventh Circuit and several other circuit courts of appeals have held "that stock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact."

-7-

*Reimer Express World Corp.*, 230 F.3d at 943 (collecting cases). The Seventh Circuit's analysis in this regard is convincing, particularly its reliance on Supreme Court precedent to support the proposition that "[t]he unilateral activity of an entity cannot subject a nonresident defendant to personal jurisdiction in the entity's forum" because "'[e]ach defendant's contacts with the forum State must be assessed individually.'" *Id.* at 944 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)). Equally convincing is the Seventh Circuit's analysis of why the "MPPAA's control group provision regarding withdrawal liability does not alter the rule that corporate affiliation or ownership is not a sufficient minimum contact for the exercise of personal jurisdiction." *Id.* at 944-45. We agree that the fact "a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised." *Id.* at 944.

Although jurisdiction cannot be premised on corporate affiliation alone even when the claims arise under the MPPAA, the Fund also argues personal jurisdiction arises from Defendants' active participation in the management of Greystone. For example, it alleges Eugene Reynolds, an owner and member of the Board of Directors of Coleridge and Jelniki, was also the president of Greystone, served as its Chief Executive Officer,[4] and sat on its Board of

---

[4] In his affidavit, Mr. Reynolds states he never acted as Chief Executive
(continued...)

-8-

Directors. According to the Fund, Mr. Reynolds actively participated in the day-to-day management of Greystone and made "decisions related to its operations and eventual closure in 2011."

Even accepting the Fund's assertion that Mr. Reynolds actively managed Greystone, an assertion he denies,[5] the Fund cannot show the necessary minimum contacts. The Fund argues that any actions Mr. Reynolds took in his official capacity as an owner and operator of Coleridge and Jelniki are attributable to Coleridge and Jelniki. The record, however, contains no credible allegations Mr. Reynolds routinely acted on behalf of Coleridge and Jelniki when he discharged any of his duties as an officer and director of Greystone. *See id.* at 943 (holding "constitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an usually high degree of control over the subsidiary"). For example, the Fund asserts in its appellate brief that "Greystone, with Mr. Reynolds acting as President, actively sought information concerning Greystone's potential withdrawal liability as part of planning." The amended complaint, however, alleges it was James Lloyd, the

---

[4](...continued)
Officer of Greystone.

[5]According to Mr. Reynolds, he was not involved in the day-to-day affairs of Greystone and "those affairs were run by a local management team headed by Jim Lloyd."

-9-

General Manager of Greystone, who requested an estimate of Greystone's withdrawal liability for 2006 from the Fund. The complaint further alleged an actuary hired by Greystone requested information concerning Greystone's withdrawal liability in 2007 but it fails to allege any involvement by Mr. Reynolds in the decision to solicit this information from the Fund. Further, even if Mr. Reynolds was involved in seeking information on Greystone's potential withdrawal liability in 2006 or 2007 (possibly indicating Greystone intended to withdraw from the Fund without qualifying under an MPPAA safe harbor provision), there is no support for the proposition he did so in his capacity as an owner or director of Coleridge or Jelniki.

Mr. Reynolds's involvement in the negotiation of the 2007 collective bargaining agreement presents a slightly closer question. The Fund has alleged Mr. Reynolds—and, by extension, Coleridge and Jelniki— was involved in negotiating the terms of the collective bargaining agreement that obligated Greystone to make contributions to the Fund. Although the record shows Mr. Reynolds used Greystone letterhead to correspond with the union president on June 15, 2007, that correspondence provides no support for the proposition he was acting on behalf of either Coleridge or Jelniki during the negotiations. A second document from the same time frame, however, is ambiguous. Dated March 15, 2007, and titled simply "Agreement," it states as follows: "Greystone and Local 16-C have agreed to a meeting between the Union's committee and

-10-

Eugene Reynolds to give the Union the opportunity to communicate their concerns *directly to the owner*." (emphasis added). It could reasonably be concluded that the reference to "the owner" was a reference to Coleridge, the owner of a 100% interest in Greystone. If so, it is possible Reynolds was acting on behalf of Coleridge when he met with union officials in 2007. One meeting, however, is not a sufficient minimum contact to support the exercise of specific jurisdiction, particularly when the Fund has not alleged how its injuries arose from that meeting.

Having reviewed the entire record and fully considered the arguments of the parties, we conclude the record fails to show that either Coleridge or Jelniki had sufficient minimum contacts with the forum to permit the federal courts to exercise specific personal jurisdiction. Because the Fund's argument fails due to sparse record support, we next consider whether the district court abused its discretion when it denied the Fund's motion for further discovery.

"When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling-Temco-Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir. 1975). We review a district court's refusal to permit jurisdictional discovery for abuse of discretion. *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). A district court abuses that discretion if the denial results in prejudice to the movant. *Id.* "Prejudice is present where pertinent facts bearing on the question

-11-

of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Id.* (quotation and alteration omitted).

Here the district court denied discovery "because the evidence demonstrates that Defendants were not engaged in Greystone's daily affairs." As we have noted, however, the March 15, 2007, one-page agreement between Mr. Reynolds and the union raises a possibility Defendants were involved in the day-to-day management of Greystone, or at least in the negotiation of its collective bargaining agreement. If true, this controverts the statements made in Mr. Reynolds's affidavit that Defendants had no involvement in the day-to-day operations of Greystone and that any actions he took on behalf of Greystone were not done at the direction or in the interest of Defendants. Accordingly, the Fund has demonstrated prejudice and the district court abused its discretion by denying its motion for jurisdictional discovery.

## IV. Conclusion

The district court's order dismissing the Fund's complaint for lack of personal jurisdiction and denying jurisdictional discovery is **reversed** and the matter **remanded** for further proceedings not inconsistent with this opinion. On remand, the district court shall permit jurisdictional discovery of material relating to the question of whether Coleridge and Jelniki, either directly or through their owners, directors, or agents, were involved in the day-to-day management of Greystone. If necessary, the district court shall also reevaluate whether

exercising specific jurisdiction over Defendants comports with traditional notions of fair play and substantial justice. *See Peay*, 205 F.3d at 1212 ("[E]ven if a defendant has minimum contacts with the forum, due process is not satisfied unless the assertion of personal jurisdiction would comport with fair play and substantial justice." (quotations omitted)).

                          ENTERED FOR THE COURT

                          Michael R. Murphy
                          Circuit Judge

No. 16-3007, <u>GCIU-Employer Retirement Fund v. Coleridge Fine Arts</u>

**KELLY**, Circuit Judge, concurring in part and dissenting in part.

I join the court's order and judgment holding that there are insufficient minimum contacts with the forum for specific personal jurisdiction. However, I dissent from the decision to remand to allow for jurisdictional discovery. I am at a loss as to why we would remand for additional discovery given Plaintiff's position that the facts it does have support specific personal jurisdiction and its statement "[i]t is irrelevant that Coleridge and Jelniki did not operate Greystone on a day-to-day basis." Aplt. Reply Br. at 14.

A district court's refusal to allow jurisdictional discovery is reviewed for an abuse of discretion. <u>Budde v. Ling-Temco-Vought, Inc.</u>, 511 F.2d 1033, 1035 (10th Cir. 1975). The refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to the litigant or a better showing of the facts is necessary. <u>Sizova v. Nat'l Inst. of Standards & Tech.</u>, 282 F.3d 1320, 1326 (10th Cir. 2002). Where a foreign defendant is involved, however, courts have cautioned that extensive discovery should not be compelled to determine whether personal jurisdiction exists. <u>Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.</u> (Reimer), 230 F.3d 934, 946 (7th Cir. 2000) (citing <u>Jazini v. Nissan Motor Co.</u>, 148 F.3d 181, 185–86 (2d Cir. 1998)). A plaintiff must make a colorable or prima facie showing of personal jurisdiction to obtain jurisdictional discovery. See <u>id.</u>

The Seventh Circuit's reasoning in Reimer is persuasive. There, a multiemployer pension fund brought suit against two Canadian companies under the Employer Retirement Income Security Act. See id. at 937. The Seventh Circuit held that the district court did not abuse its discretion in denying jurisdictional discovery for three notable reasons. See id. at 947. First, the plaintiff's evidence only showed that the foreign defendants were affiliated with a U.S. subsidiary. Id. Second, the plaintiff made no showing that corporate formalities were not maintained. Id. And third, the plaintiff could not demonstrate that the defendants exerted an unusually high degree of control over the subsidiary. Id.

The same can be said here. Plaintiff-Appellant GCIU-Retirement Fund has produced evidence suggestive of no more than corporate affiliation, which is, of course, insufficient to support a prima facie showing of personal jurisdiction. Having lost on that front, it wants to probe further. The district court acted well within its discretion in denying discovery. We should not substitute our discretion for that of the district court.